**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MORTIMER EXCELL,

                                        Plaintiff,

            - v -                                       Civ. No. 9:08-CV-945
                                                              (DNH/RFT)

BRIAN FISCHER, Commissioner, DOCS, *et al.*,[1]

                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

MORTIMER EXCELL
Plaintiff, *Pro se*
96-R-8355
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

HON. ANDREW M. CUOMO                          ADAM SILVERMAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        *Pro se* Plaintiff Mortimer Excell brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that he suffered the following constitutional violations: (1) conspiracy to violate his First,

Eighth, and Fourteenth Amendment rights; (2) excessive force; (3) deliberate indifference to his

serious medical needs; (4) retaliation; (5) due process violations stemming from both Disciplinary

and Parole Board Hearings; (6) violation of his First Amendment rights of religious affiliation and

---

[1] Plaintiff names a total of forty-three (43) Defendants in his eighty-eight (88) page Complaint. *See* Dkt. No.
1, Compl.

expression; and (7) interference with his personal and legal mail.

Presently before the Court are Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order and Defendants' Motion to Dismiss. Dkt. Nos. 57, 59, & 62.[2] In support of his Opposition to Defendants' Motion, Plaintiff has submitted two Supplemental Briefs, both of which have Exhibits attached. Dkt. Nos. 79, 82, & 84. The Court has not considered these Exhibits in considering the instant Motion to Dismiss. For the reasons that follow, it is recommended that the Defendants' Motion to Dismiss be **GRANTED in part** and **DENIED in part**, and the Plaintiff's Motion for a Preliminary Injunction be **DENIED**.

## I. SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff's Complaint is eighty-eight (88) pages in length and contains eighty-one (81) numbered paragraphs and five (5) "Causes of Action" which are in sum and substance summaries of the claims alleged in the preceding 81 paragraphs. *See generally* Dkt. No. 1, Compl. Given the length of the Complaint and the amount of claims stated therein, we shall provide in this section a summary of Plaintiff's claims and delve into the finer points of his allegations within our discussion of the Defendants' bases for dismissal. This summary is derived from the facts alleged in Plaintiff's Complaint, which must be accepted as true for the purposes of addressing Defendants' Motion to Dismiss brought pursuant to FED. R. CIV. P. 12(b)(6). *See infra* Part II.A.

From July through September 4, 2007, Plaintiff was incarcerated at Upstate Correctional Facility ("Upstate"), where he was allegedly denied medication for various physical ailments by

_____

[2] Defendants Tamer, Urzech, T. Carter, and Moak filed an Answer to the Complaint and do not join in the Motion to Dismiss. Dkt. No. 61, Ans.; Dkt. No. 62, Defs.' Mem. of Law at p.1 n.2. The causes of action asserted against these Defendants for excessive force, conspiracy, retaliation, and interference with his religious practices survive this Motion. Also, Defendants C.O. Green, Labetz, Oltloff, and Karen Bellamy have not been served with process. Dkt. Nos. 17, 54, & 66 (no summons has been returned for Defendant Bellamy).

Defendant Nurse Fearchild, denied recreation for a period of three days by Defendant N. Bezio, threatened and harassed by Defendant Brian Bengmann, and had his due process rights violated during a Disciplinary Hearing. Dkt. No. 1, Compl. at ¶¶ 1-7.[3]  In September 2007, Plaintiff was sent to Great Meadow Correctional Facility ("Great Meadow") in order to attend a medical appointment at Albany Medical Hospital.  *Id.* at ¶ 7.  During his stay at Great Meadow, Plaintiff was denied his "medical draft bag" and therefore forced to wear the same clothes from September 2-18, denied drinking water for one twenty-four (24) hour period, threatened, and issued a false misbehavior report by Defendant Correctional Officer ("C.O") Green.  *Id.* at ¶¶ 7-10.

Plaintiff alleges that on October 18, 2007, after his transfer back to Upstate, Defendant T. Ramsdell sexually assaulted him by grabbing and squeezing his penis during a body search and that Ramsdell and Defendant Rokece pushed his face against an iron rail, causing injuries to his face and forehead.  *Id.* at ¶¶ 11-12 & 14.  In the days that followed Plaintiff was threatened, harassed, issued a false Misbehavior Report accusing him of possessing contraband, and for a two-day period denied a bed pan and personal hygiene products.  *Id.* at ¶¶ 13-19.  In November 2007, Plaintiff was transferred to Clinton Correctional Facility ("Clinton"), where in December of that year, several Defendants, including S. Tyrell, R. Lawrence, Poltlos, and Frenyea, conspired to take his identification card, put him in keeplock, and improperly opened his legal mail.  *Id.* at  ¶¶ 22-27.  During a Disciplinary Hearing held on December 24, 2007, before Hearing Officer Defendant Lieutenant ("Lt.") Miller, Plaintiff was denied the opportunity to present evidence or testimony and was not given a written disposition of the proceeding.  *Id.* at ¶ 32.

On January 15, 2008, Plaintiff had a Parole Hearing before Defendants Loomis, Ferguson,

---

[3] All citations to the Plaintiff's Complaint refer to the paragraphs contained in the "Statement of Facts" section, starting on page twelve (12) of the Complaint.

and Ortloff,[4] during which Plaintiff articulated his complaints about the aforementioned alleged constitutional violations. These Defendants denied Plaintiff parole. *Id.* at ¶¶ 61-62.

On May 13, 1008, Defendant C.O. M. Orzech told Plaintiff to cut his beard by May 17th or he would issue Plaintiff a misbehavior report. *Id.* at ¶ 36. That same day, Plaintiff filed a request to Department of Correctional Services ("DOCS") officials for a beard permit based on his Rastafarian religious beliefs and, on May 14th, received a receipt for said request stating that Plaintiff did not have to cut his beard during the pendency of the decision on his request. *Id.* at ¶¶ 37-39. On May 15th, Plaintiff explained to Orzech that he had submitted a request for a beard exemption and could not be forced to cut his beard until that request was decided, however, on May 17th, Orzech denied Plaintiff recreation time and placed him in keeplock because he had not cut his beard. *Id.* at ¶¶ 36-43. Also, Plaintiff alleges that on May 17th, Orzech allegedly threatened to beat him up if he filed any more complaints to Defendants Commissioner Fischer and Superintendent Artus. *Id.* at ¶ 43.

On May 18, 2008, Plaintiff filed a medical services request to address his heart pain and weakness. *Id.* at ¶ 45. On May 19, 2008, Defendant C.O.'s T. Carter and Orzech arrived at Plaintiff's cell to take him to the medical unit and proceeded to cuff Plaintiff's hands behind his back, then pushed him to the floor as he was being escorted out of his cell block and punched, kicked, and beat him, as did Defendant C.O.'s Tamer and Moak. *Id.* at ¶¶ 46-47. Plaintiff was escorted to the hospital where he was punched by Moak and Defendant Lieutenant ("Lt.") Labetz, and Defendant Nurse R. Rock allegedly refused to treat him for the injuries he sustained. *Id.* at ¶¶

---

[4] Defendant Ortloff's name is spelled "Oltloff" on the Docket Report. Because both parties refer to this Defendant as "Ortloff," we presume his name to be spelled as such.

48 & 63(1).[5]   Afterwards, Plaintiff was sent to the Special Housing Unit ("SHU"), where he was denied medical care, allegedly in order to prevent evidence of the incident in his medical records. *Id.* at ¶¶ 49-50.

On May 20, 2008, Orzech and Carter issued Plaintiff Misbehavior Reports alleging that Plaintiff had attacked Orzech while being escorted to the medical unit; on May 27, 2008, a Disciplinary Hearing was convened on those charges before Hearing Officer Defendant Captain D. Uhler.  At the Disciplinary Hearing, Plaintiff was denied the opportunity to call witnesses and present evidence, and was improperly removed from the proceedings; in addition the Hearing was allegedly improperly extended through June 19, 2008.  *Id.* at ¶¶ 52-54, 58, & 63(2)-64.

From July 2005 through July 2008, Plaintiff did not receive any mail from family or friends, and his family members did not receive outgoing mail he sent.  *Id.* at ¶¶ 63(1) & 65.  In addition, letters of complaint Plaintiff sent to various New York State Officials and Officers were not received.  Plaintiff alleges that his incoming and outgoing mail was stolen by Defendants J. Rice, Quinn, and D. Waldron, who are mail clerks at Auburn, Upstate, and Clinton Correctional Facilities, respectively.  *Id.* at ¶¶ 65, & 75-80.

Finally, on July 16, 2008, Plaintiff was transferred back to Upstate, where he was allegedly denied medical care from July 17 through August 14, 2008.  *Id.* at ¶ 81.

## II.  DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility

---

[5] There are two consecutive paragraphs in the Complaint numbered 63.  To avoid confusion, we will refer to them as paragraphs 63(1) and 63(2), respectively.

of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing

*Twombly*).[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged."  *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

## B.  Eighth Amendment Claims

### 1.  *Medical Treatment*

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical

---

[6] By its opinion in *Bell Atlantic Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 562-63 (2007) (quoting *Conley*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Id*. at 563.

needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted) (alteration in original).  This standard contains both objective and subjective elements.  *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Id.* at 183-84 (citing *Chance v. Armstrong*, 143 F.3d at 702 & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

In this case, Plaintiff's medical indifference claims are as follows: (1) in mid-July 2007, he suffered from heart and chest pain for a period of five days, but received only non-aspirin medication and, on July 12, 2007, was denied a blood pressure test by Defendant Nurse Fearchild; (2) in November 2002, he was prescribed "Omeprazole 20 mg caps" for his "belly pains," but was denied refills of that medication by Defendant Nurses Travers and Fearchild at Upstate, and by Defendant Nurses Lashway, Rock, and Benthley at Clinton; and (3) Defendants Rock, Benthley, Lashway, Fearchild, and Travers failed to treat him for the injuries he sustained during the alleged use of excessive force against him on May 19, 2008, and falsified his medical records to cover-up the injuries he allegedly sustained on that date.[7] Compl. at ¶¶ 1, 48, 74 & 81.

In Plaintiff's first and second medical indifference claims, there is no allegation that he suffered from a serious medical condition.  Plaintiff claims that he suffered from heart and chest

---

[7] Plaintiff also alleges that at a Disciplinary Hearing held on June 16, 2008, he told the presiding hearing officer, Defendant Uhler, about his medical problems, and that Uhler denied his requests for medical care. Compl. at ¶ 60.  To the extent Plaintiff intended to raise an Eighth Amendment claim against Uhler, that claim must fail because Uhler was not responsible for Plaintiff's medical treatment.

pains for a period of five (5) days, and that he was denied refills for medication used to treat stomach pain. Compl. at ¶¶ 1 & 74. Such conclusory allegations of heart, chest, and stomach pain, without more, do not satisfy the objective prong of the Eighth Amendment test. *See Bell. Atl. Corp. v. Twombly*, 550 U.S. at 545 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level"); *see also Hutchinson v. New York State Corr. Officers*, 2003 WL 22056997, at *5 (S.D.N.Y. Sept. 4, 2003) (holding that a general allegation of chest pain is not sufficiently serious under the Eight Amendment) (citations omitted); *Pender v. McClellan*, 1996 WL 343253, at *4 (W.D.N.Y. Feb. 5, 1996) (dismissing plaintiff's Eighth Amendment claims based on stomach pain when there was no allegation that his condition was urgent or otherwise serious). Therefore, it is recommended that those claims be **dismissed**.

Likewise, in his third medical indifference claim alleging Defendants Rock, Benthley, Lashway, Fearchild, and Travers failed to treat him for the injuries he sustained during the alleged use of excessive force against him on May 19, 2008, Plaintiff fails to allege that he suffered from a constitutionally significant injury or medical condition. Plaintiff merely alleges in general terms that his head and neck were hurt, he experienced head and heart pain, and that he requested x-rays for unspecified injuries to his head and body. Compl. at ¶¶ 48-49 & 81. These statements of general pain cannot sustain an Eighth Amendment claim because they do not allege that Plaintiff suffered from "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702. Therefore, these claims should be **dismissed.**[8]

### 2. *Conditions of Confinement*

In order to state a valid conditions of confinement claim under the Eighth Amendment, a

---

[8] Plaintiff's other claims surrounding the alleged excessive use of force on May 19th remain. *See infra* Parts II.F & IV.

plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

Plaintiff alleges the following conditions of confinement claims: (1) he was denied recreation on July 12, 13, and 15, 2007, Compl. at ¶ 2; (2) while on a multi-day visit to Albany Medical Hospital he was forced to wear the same clothes from September 2 through September 18, 2007, after being denied his "medical trip draft bag," Compl. at ¶¶ 7 & 10; (3) from September 12-13, 2007, he was forced to stay in a room without drinking water, Compl. at ¶ 8; and (4) he was denied all personal hygiene items from October 19-20, 2007, Compl. at ¶ 17.

With respect to Plaintiff's claim that he did not have drinking water in his cell for a 24-hour period from September 12-13, it unclear whether he is asserting that he did not have access to running water in his cell, or that he was completely denied water for a 24-hour period. Compl. at ¶ 8. To the extent Plaintiff intended to allege the former, a lack of access to running water, without more, does not constitute an Eighth Amendment violation, *James v. Monroe County Jail*, 2005 WL 2030730, at *3 (W.D.N.Y. Aug. 23, 2005) (citation omitted); to extent Plaintiff intended to allege the latter, that claim is weakened by his statement that he was provided food on that date, but refused to eat it for fear that it was drugged, Compl. at ¶ 8. Thus, Plaintiff admits that he was not deprived of sustenance, even if he refused to accept it. Also, although Plaintiff alleges he was forced to wear the same clothes from September 2 through September 18, 2007, he does not allege that he was denied the opportunity to bathe or otherwise clean himself during that period.

In sum, none of these deprivations are so serious as to constitute a denial of the "minimal

civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. at 297-99 (citation omitted).

Plaintiff's claims amount to assertions that he was inconvenienced and perhaps discomforted for

short periods of time, and are therefore *de minimis* and not cognizable under the Eighth Amendment,

which only protects inmates from conditions that violate "contemporary standards of decency."

*Hudson v. McMillan*, 503 U.S. 1, 8 (1992); *see also, e.g., Hamilton v. Conway*, 2008 WL 234216,

at *9 (W.D.N.Y. Jan. 28, 2008) (stating that "briefly denying hygienic materials does not violate

contemporary standards of decency"), *Ochoa v. Connell*, 2007 WL 3049889, at *12 (N.D.N.Y. Oct.

18, 2007) (citing cases for the proposition that the denial of recreation for a few days does not

implicate the Eighth Amendment).  Therefore, it is recommended that these claims be **dismissed**.

### 3. *Threats, Harassment, Excessive Force, and Sexual Abuse*

Plaintiff makes numerous allegations that various Defendants threatened, harassed, and

subjected him to verbal abuse.  Specifically, Plaintiff alleges that (1) on July 12, 2007, Fearchild

threatened to issue a misbehavior report against him, Compl. at ¶ 1; (2) Defendant Bengmann

threatened him on August 8, 2007, Compl. at ¶ 3; (3) on September 12, 2007, Defendant Green

threatened to assault him, Compl. at ¶ 8; (4) on October 19, 2007, Defendant Crossman threatened

to beat him up if he did not stop talking and then verbally abused Plaintiff with profane language

and gestures, Compl. at ¶ 18; (6) on December 21, 2007, Defendants Tyrell, Lawrence, Poltlos,

Frenyea, and other unnamed officers conspired to harass and provoke Plaintiff when they took his

identification card, put him on keeplock, and improperly opened his legal mail, Compl. at ¶¶ 24-27;

and (7) Defendant Poltlos threatened his life, pushed his face up against a wall, and made racial

epithets against Plaintiff while escorting him to the mental health unit, Compl. at ¶¶ 28-29.

It is well settled law in this Circuit that "42 U.S.C. § 1983 is not designed to rectify

harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. N.Y. City Dep't of Corr.*, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001). Thus, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998)). Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)). Therefore, the aforementioned claims of threats and harassment should be **dismissed.**

To the extent Plaintiff intends to assert a claim of excessive force against Defendant Poltlos for allegedly pushing his face up against a wall, that action does not rise to the level of an Eighth Amendment violation, especially when, as here, Plaintiff has not alleged he was in any way injured by the Defendant's actions. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.") (internal citations omitted); *see also Govan v. Campbell*, 289 F. Supp. 2d 289, 300 (N.D.N.Y. 2003) (prisoner's claim that he was pushed up against a wall, even if true, did not amount to a constitutional violation).

Plaintiff has also brought claims of sexual and physical abuse against Defendants Ramsdell and Rokece. Compl. at ¶¶ 11-14. Specifically, Plaintiff alleges that during a search of his person

for contraband, Defendant Ramsdell grabbed and squeezed his penis,[9] and that Rokece pushed his

face up against an iron rail.  *Id.* at ¶¶ 11-12 & 14.  Like Plaintiff's claim against Poltlos, his claim

that Rokece pushed him against a rail, even if true, is *de minimis* and therefore fails to state a claim.

*See Govan v. Campbell*, 289 F. Supp. 2d at 300.  As per Plaintiff's claim against Ramsdell, in some

cases, "[s]exual abuse may violate contemporary standards of decency" so as to implicate the Eighth

Amendment.  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  However, the Second Circuit

has made clear that allegations of minor, isolated incidents, even if inappropriate, will not normally

state a valid cause of action under the Eighth Amendment.  *Id.*  In this case, Plaintiff has alleged a

quick, isolated incident of inappropriate touching that occurred during a search of his person for

contraband.  Such an incident, even if true, does not constitute an Eighth Amendment violation.  *Id.*

(prisoner's allegation that a corrections officer inappropriately touched his penis on one occasion

did not state a valid claim), *see also Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y.

2005) (prisoner's allegation that a corrections officer grabbed his penis during a pat frisk did not

state a valid constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368, 373 & 375 (S.D.N.Y.

2001) (squeezing an inmate's genitalia on several occasions during pat frisks did not constitute an

Eighth Amendment violation).

Therefore, it is recommended that Plaintiff's allegations of sexual abuse, threats, excessive

force, and harassment be **dismissed** for failure to state a claim.

### C.  Due Process Claims

Plaintiff alleges that he suffered due process violations during a Parole Hearing held on

January 15, 2008, and Disciplinary Hearings held in 2007 and 2008.

---

[9] Plaintiff does not allege that he was in any way injured when Ramsdell allegedly squeezed his penis.

### 1. *Parole Hearing*

Plaintiff alleges that on January 15, 2008, he had a Parole Hearing before Defendants Loomis, Ferguson, and Ortloff, all Commissioners of the New York State Division of Parole. Compl. at ¶ 61. Plaintiff states that he informed those Defendants about all of the constitutional violations he had suffered during his incarceration, but that Defendants Loomis and Ferguson prevented Plaintiff from pleading his side of the case and disregarded his suffering. *Id.* On January 16, 2008, Plaintiff was denied parole by Loomis, Ferguson, and Ortloff; Plaintiff alleges that but for such denial, he would not have been assaulted on May 19, 2008. *Id.* at ¶ 62.

As Defendants point out, the Second Circuit has held that "parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (citations omitted). Therefore, because Defendants Loomis, Ferguson, and Ortloff were acting as quasi-judicial officers when they allegedly improperly denied Plaintiff's parole, they are entitled to absolute immunity and the claims for damages[10] against them should be **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(I), which gives the Court authority to dismiss a claim brought by a plaintiff proceeding *in forma pauperis* "at any time" if it determines such claim to be frivolous.

### 2. *Disciplinary Hearings*

Plaintiff makes several due process claims concerning Disciplinary Hearings held on (1) November 21, 2007; (2) December 24, 2007; and (3) May 27 through June 19, 2008. Compl. at ¶¶ 21, 32, 58-60, 63(2), & 64. Plaintiff alleges that at the Disciplinary Hearing presided over by Defendant D. Kemp on November 21, 2007, Kemp prevented Plaintiff from presenting a defense

---

[10] Plaintiff does not ask for any other non-pecuniary form of relief against Defendants Loomis, Ferguson, and Ortloff. *See* Compl. at pp. 77-80.

Case 9:08-cv-00945-DNH-RFT   Document 88   Filed 08/25/09   Page 15 of 29

by threatening him and stating that if Plaintiff did "it her way[,] she [would] not give [him] any time and [would] dismiss the charges against [him]." *Id.* at ¶ 21. Plaintiff alleges Kemp found him guilty of smuggling and issued him a sentence of "counsel and release." *Id.*

Plaintiff alleges that on December 24, 2007, Defendant Lieutenant Miller presided as Hearing Officer over a Disciplinary Hearing during which Plaintiff was denied the opportunity to present evidence and testimony and that he was not given a written disposition of the Hearing.[11] *Id.* at ¶ 32. Plaintiff alleges that he was found guilty at the Hearing and sentenced to thirty (30) days keeplock. Plaintiff states that he filed a complaint with Defendant Racette requesting a new hearing, which was denied. *Id.*

Finally, Plaintiff alleges that on May 27, 2008, Defendant Uhler presided over a Disciplinary Hearing on charges brought by Defendants Orzech and T. Carter stemming from the May 19, 2008 incident, at which Plaintiff was denied the opportunity to present witnesses and other evidence. *Id.* at ¶ 54. Plaintiff also alleges that such Hearing was adjourned to June 3, 2008, and then again to June 9, 2008, but he did not receive a copy of an extension form in either instance and was made to wait in SHU during those adjournments. *Id.* Plaintiff alleges that the Hearing reconvened on June 16, 17, and 19, 2008 before Defendant Uhler, during which time Plaintiff was again precluded from presenting evidence and Uhler allegedly improperly led the witnesses. *Id.* at ¶¶ 58, 63(2), & 64. Plaintiff also avers that he was improperly removed from the proceedings on June 16, 2008. *Id.* at ¶ 63(2). Plaintiff does not state what the outcome of the May 27-June19, 2008 Disciplinary Hearing was, nor if he received any form of punishment after its disposition. *Id.* at ¶¶ 54 & 58-60.

---

[11] Plaintiff also alleges that he did not receive a written disposition after a Disciplinary Hearing held in November 2007. Compl. at ¶ 20. However, that claim is alleged only against Superintendent Bukeco, who is not a named Defendant in this action, and therefore, should be **dismissed** as Plaintiff has alleged no personal involvement on the part of any Defendant.

*-15-*

In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In this case, Plaintiff has alleged that he was sentenced to thirty (30) days keeplock after his conviction in the Disciplinary Hearing conducted on December 24, 2007. Courts in this Circuit have held that a 30 day period of keeplock, absent additional egregious circumstances, is not "atypical and significant" so as to create a liberty interest and thereby trigger the protections of the Due Process Clause. *See Rivera v. Goord,* 2008 WL 5378372, at *2-3 (N.D.N.Y. Dec. 22, 2008) (holding that 40 days of room restriction "did not constitute a constitutionally cognizable liberty deprivation"); *Uzzell v. Scully*, 893 F. Supp. 259, 263 (S.D.N.Y. 1995) (45 days of keeplock is not atypical and significant); *Rivera v. Coughlin*, 1996 WL 22342, at *5 (S.D.N.Y. Jan. 22, 1996) (89 days in keeplock does not create a liberty interest). Indeed, courts have roundly rejected the notion that such a short period of confinement, without additional hardships, creates a liberty interest even when that confinement is completely segregated, such as when an inmate is sent to the Special Housing Unit ("SHU"). *See Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (101 days in normal SHU conditional was not atypical or significant) (cited in *Ochoa v. DeSimone*, 2008 WL 4517806, at *4 (N.D.N.Y. Sept. 30, 2008) (30 days in SHU, without more, did not create a liberty interest)); *Thompson v. LaClair*, 2008 WL 191212, at *3 (N.D.N.Y. Jan. 22, 2008) (30 days in SHU does not create a liberty interest).

-16-

With respect to Plaintiff's allegations regarding the Disciplinary Hearings held on November 21, 2007 and from May 27, 2008, through June 19, 2008, Plaintiff does not allege that he suffered any atypical or significant hardship as a consequence of those alleged due process violations.  To the extent Plaintiff intended to allege that his confinement in SHU during the pendency of his Hearing that went from May 27 through June 19, 2008, was a due process violation, such a short period of confinement is not atypical and significant for the reasons mentioned above.  Therefore, it is recommended that his due process claims be **dismissed** because he had failed to implicate a liberty interest with respect to any of the due process violations alleged.

### D. First Amendment Claims

1. *Interference with Personal Mail*

Plaintiff alleges that the Defendants interfered with his outgoing and incoming mail. Plaintiff states that his family members sent him numerous letters, but that he did not receive any mail from family or friends from September 2005 through July 2008.  Compl. at ¶¶ 63(1) & 65. Plaintiff also states that on January 15, 2008, his mother informed Deacon Debiec[12] that she had not received any of Plaintiff's letters.  *Id.* at ¶ 63(1).  Plaintiff alleges that he sent his daughter and her mother a certified letter while in Auburn in 2005, but that he never received the return receipt; he called his daughter's mother who informed him that she never received the letter.  *Id.* at ¶¶ 75-76. Plaintiff accuses the Senior Mail Clerk at Auburn, Defendant J. Rice, of stealing his mail.  *Id.* Also in 2005, Plaintiff  allegedly sent complaint letters to the New York Department of State Ethics Commission and, having heard no response, sent another letter to the Ethics Commission asking if they received his complaints, to which they responded they had not.  *Id.* at ¶ 77.  Plaintiff accuses

---

[12] Deacon Debiec is not a named Defendant in this action.

Defendant Rice of stealing those complaints. *Id.*

Plaintiff alleges that from 2005 through March 24, 2007, he sent over two hundred (200) letters to his daughter and her mother, all of which were allegedly stolen by Defendant Quinn, a mail clerk at Upstate. *Id.* at ¶ 76. In addition, Plaintiff accuses Quinn of stealing letters he sent to DOCS' Rastafarian Priest Abuna A. Foxe in 2006, as well as a complaint of criminal misconduct sent to various government officers. *Id.* at ¶ 78.

In March 2008, Plaintiff spoke with his father who advised him that he had not received any correspondence from Plaintiff for over three years, though Plaintiff alleges he sent his parents over sixty (60) letters between 2005 and 2008. *Id.* at ¶ 79. Plaintiff accuses Defendants Rice, Quinn, and Defendant Waldron, who is a Senior Mail Supply Clerk at Clinton, of obstructing his written communications to his family. *Id.*

As Plaintiff correctly contends, the First Amendment protects an inmate's right to send and receive both legal and non-legal mail, though that right may be limited by restrictions that are "'reasonably related to legitimate penological interests.'" *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 79 (1987)). However, Plaintiff's sweeping accusations that his incoming and outgoing mail was obstructed for a period of over three years does not assert a plausible claim under § 1983. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937. Plaintiff's conclusory accusations that Defendants Rice, Quinn, and Waldron stole his incoming and outgoing mail appears to be based on nothing more than the fact that those Defendants were DOCS employees who worked in the mailrooms at Auburn, Upstate, and Clinton, respectively. Indeed, beyond his own suspicions, Plaintiff offers no factual allegations that link these Defendants to the alleged obstruction of his mail from 2005 through 2008. Therefore, we recommend that these claims

*-18-*

be **dismissed** as conclusory.

## 2. *False Misbehavior Reports*

Plaintiff alleges that several Defendants filed false misbehavior reports against him.  Some of those allegations include the additional claim that the false reports were filed in retaliation for the exercise of his First Amendment rights, some do not.  We address first the claims that do not have the retaliation rider attached.

Plaintiff alleges that on October 19, 2007, Defendant Ramsdell, in an effort to cover-up staff misconduct, issued him a false Misbehavior Report accusing Plaintiff of carrying contraband in his crotch.  Compl. at ¶ 15.  Plaintiff also alleges that on December 22, 2007, Defendant Tyrell filed a false Misbehavior Report accusing Plaintiff of threats in order to cover-up Tyrell's improper opening of Plaintiff's legal mail.  *Id.* at ¶ 31.   However, there is "no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d at 862 (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Gill v. Riddick*, 2005 WL 755745, at *7 (N.D.N.Y. Mar. 31, 2005).  While an inmate may have a valid cause of action where a false misbehavior report is filed *in retaliation* for the exercise of a constitutional right, *see, e.g., Gill v. Riddick*, 2005 WL 755745 at *7, Plaintiff has not established that he was engaged in constitutionally protected conduct with respect to these claims.  Therefore, it is recommended that these claims be **dismissed** for failure to state a claim and pursuant to 42 U.S.C. § 1915(g).  *See supra* Part II.C.1.

We now consider Plaintiff's claims that false misbehavior reports were filed against him with retaliatory animus.  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation

- can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against him; and (3) a causal connection exists between the protected speech and the adverse action. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

In this case, Plaintiff alleges that (1) at some point prior to August 8, 2007, Defendant Bezio submitted a letter of complaint Plaintiff had written to Defendant Bengmann of the DOCS Inspector General's Office in retaliation for a civil rights action Plaintiff had previously initiated against several DOCS officials, Compl. at ¶ 3; (2) on August 11, 2007, Defendant Bengmann issued Plaintiff a false Misbehavior Report in retaliation for complaints Plaintiff had filed against several DOCS and New York State officials, Compl. at ¶ 3; (3) on October 21, 2007, Defendant Crossman filed a false Misbehavior Report against Plaintiff in retaliation for his filing a civil lawsuit against numerous DOCS officials, Compl. at ¶ 19; and (4) on December 22, 2007, Defendant Lawrence filed a false Misbehavior Report against Plaintiff in retaliation and in order to cover-up staff misconduct, Compl. at ¶ 30.

With respect to the first two claims listed above, Plaintiff alleges that on August 8, 2007, he spoke with Defendant Brian Bengmann, who told Plaintiff that Bezio had forwarded him a letter written by Plaintiff that allegedly included threats against the Upstate staff. *Id.* at ¶ 3. Plaintiff

*-20-*

states that Bengmann produced a letter of complaint Plaintiff wrote to Defendant Woods about his medical issues, assaults he had endured, and his allegedly improper SHU confinement. *Id.* Plaintiff alleges that he received a Misbehavior Report on May 21, 2008, for sending that letter to Woods, and was eventually assessed ninety (90) days in SHU on that charge. Plaintiff states that notwithstanding the punishment he had already been assessed, Defendant Bezio sent his letter to Defendant Bengmann on August 8, 2007, in retaliation for a civil rights action he filed in federal court that Plaintiff has identified as 9:07-CV-0305.[13] Plaintiff alleges that he received a Misbehavior Report from Bengmann on August 21, 2007, in retaliation for a complaint Plaintiff filed against Defendant Richard Roy, former-Governor Eliot Spitzer, State Commission Chairman Daniel Stewart, DOCS Commissioner Defendant Brian Fischer, and Bezio. *Id.*

With respect to Bengmann, Plaintiff's claim that he wrote a false Misbehavior Report against Plaintiff because of complaints and lawsuits Plaintiff filed against other individuals is conclusory because Plaintiff fails to allege a plausible causal connection between his protected conduct and Bengmann's allegedly false Misbehavior Report. Plaintiff himself alleges that Bengmann was acting on Plaintiff's letter of complaint that was forwarded to him by Bezio, a letter that was alleged to contain threats against DOCS officials. As per Bezio, the only retaliatory act Plaintiff has alleged is that he submitted Plaintiff's letter of complaint to Bengmann, who then authored a Misbehavior Report against Plaintiff. Thus, Plaintiff does not allege that Bezio took any adverse action directly against him. Therefore, it is recommended that these claims be **dismissed**.

Plaintiff's third and fourth retaliation claims listed above against Defendants Crossman and

---

[13] The Court takes judicial notice that Plaintiff has currently pending in the Northern District of New York another § 1983 action, *Excell v. Woods et al.*, civil action number 9:07-CV-305(GTS/GHL), in which he has brought claims against many of the same Defendants listed in this action, including Bezio.

Lawrence, respectively, both suffer from the same deficiency: neither describes with any degree of specificity the constitutionally protected conduct that was the basis for the alleged retaliatory acts. *See id.* at ¶¶ 19 (alleging that Crossman filed a false Misbehavior Report against him "as retaliation against the Plaintiff for his inmate civil complaints against numerous fellow [DOCS] employees") & 30 (asserting no constitutionally protected conduct whatsoever). Therefore, it is recommended that these claims be **dismissed** as conclusory and pursuant to 42 U.S.C. § 1915(g).

### 3. *Access to the Courts*

In paragraph thirty-five (35) of his Complaint, Plaintiff appears to allege that he was denied access to the law library on May 8, 2008, but he does not state that any Defendant was personally involved in that alleged constitutional deprivation. *Id.* at ¶ 35. In paragraph sixty-six (66) of his Complaint, Plaintiff alleges in conclusory fashion that Brousseau destroyed several grievances he filed. Once again, this claim appears to be based on nothing more than Plaintiff's own supposition and speculation. Therefore, it is recommended that these claims be **dismissed**.

### E. Conspiracy Claims

Plaintiff brings several conspiracy claims that are difficult to decipher and to the extent they can be logically interpreted, are wholly conclusory. Plaintiff alleges that Defendant Bezio (and perhaps Uhler and Boyea as well) was involved in a conspiracy to send Plaintiff to Upstate and to have him placed in a cell next to an inmate with whom Plaintiff would likely have fights. Compl. at ¶ 22. In another conspiracy claim, Plaintiff states his belief that Bezio was the mastermind behind the alleged May 19, 2008, attack against him because Plaintiff knew Bezio from Upstate and Defendants Bezio and Uhler had a history of working together against Plaintiff. *Id.* at ¶ 58. Finally, Plaintiff alleges that Defendants Fischer, LeClaire, Bezio, Artus, and Uhler conspired to subject

Plaintiff to "religious harassment and discrimination and physical assault and the prison disciplinary proceeding[s] and [to] transfer [him] back to upstate." *Id.* at ¶ 81.

All of the aforementioned conspiracy claims appear to be based solely on Plaintiff's own beliefs and conjecture and, in the absence of factual allegations, should therefore be **dismissed** as frivolous pursuant to 42 U.S.C. § 1915(g).

### F.  Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. at 1948.

If a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

Aside from naming them as Defendants, Plaintiff has failed to make any factual allegations

whatsoever against Defendants Roy, Knapp, Lucia, and Diaz.  Also, Plaintiff's only mention of Defendant LeClaire is the conclusory claim that LeClaire was somehow involved in his alleged First and Eighth Amendment violations.  Compl. at ¶ 81.  Therefore, it is recommended that the Complaint be **dismissed** as against those Defendants.

Furthermore, because we have recommended dismissal of Plaintiff's underlying constitutional claims concerning mail theft, retaliation, medical indifference, conditions of confinement, and due process, his claims of supervisory liability against Defendants Woods, Bezio, Racette, Uhler, Wright, Johnson, Brousseau, Patnode, and Bellamy, for failure to remedy those alleged violations should also be **dismissed**.  *See* Compl. at ¶¶ 10, 21-22, 32-34, 51, 58-59, 66-67, 72-73, & 79.

Defendants have not moved to dismiss Plaintiff's claims stemming from the alleged events of May 19, 2008, however, they argue that Defendants Artus and Fischer should be dismissed for lack of personal involvement.  Defs.' Mot. at pp. 16-17.  Plaintiff has alleged that prior to the alleged use of excessive force that occurred on May 19, 2008, he sent complaints to Artus and Fischer about his problems with Orzech and Orzech's alleged threat to assault him, and that such complaints were either ignored or not responded to, and therefore, Artus and Fischer failed to protect him. Compl. at ¶¶ 41, 44, 57, & 68.

In order to state a valid failure to protect claim, a prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him." *Hendricks v. Coughlin*, 942 F.2d at 113.  The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  To prove deliberate

*-24-*

indifference, the plaintiff must show that the "official knew of and disregarded an excessive risk to the plaintiff's health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998). "The official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists *and* he must also draw the inference." *Id.* at 836.

In this case, Plaintiff alleges that Artus and Fischer were put on notice of the threat to his safety by his letters of complaint dated May 15, 17, and 18, 2008.  Based on these allegations, we find that Plaintiff has stated a facially adequate claim for failure to protect.  Therefore, we recommend against dismissal of these claims against Artus and Fischer.  Similarly, Plaintiff has alleged that Defendants Warner and Rock were involved in a conspiracy to cover-up the alleged May 19th assault.  Although we recommended dismissal of Plaintiff's medical indifference claims against Rock in Part II.B.1, *supra*, Plaintiff also alleges that Rock falsified his medical records in furtherance of the alleged conspiracy to violate his Eighth Amendment rights.  Compl. at ¶¶ 48 & 70.  Warner is alleged to have participated in the conspiracy by directing Defendant Tamer not to take any close-up pictures of Plaintiff's injuries after the assault.  *Id.* at ¶ 48.  Considering that Plaintiff's underlying excessive force claim has not been challenged, dismissal of his conjoining conspiracy claims would be premature at this stage.  Therefore, it is recommended that these claims against Warner and Rock not be dismissed.

### G. Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P.

4(m).[14]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id*.

In this case, there is no indication that the Defendants C.O. Green, Labetz, Ortloff, or Karen Bellamy have been served.  *See* Dkt. Nos. 17, 54, & 66.   Although courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims against Defendants Green, Ortloff, and Bellamy lack merit, granting Plaintiff the opportunity to properly serve these unnamed Defendants would be futile.  Thus, it is recommended that Plaintiff's claims against Green, Ortloff, and Karen Bellamy be **dismissed**.  With respect to Labetz, Plaintiff has alleged that he used excessive force against Plaintiff during the May 19, 2008 incident.  Compl. at ¶ 63(1).  Because Defendants have not moved to dismiss Labetz for failure to state a claim, we will afford Plaintiff **<u>one final opportunity to effectuate service of process on Defendant Labetz</u>**.  **<u>Plaintiff is forewarned that a failure to do so will result in the Court's recommendation of dismissal of his claims against Labetz.</u>**  The Court will afford Plaintiff **<u>thirty (30) days from the date this Report-Recommendation is issued</u>** to effectuate service upon Labetz.

### III.  Plaintiff's Motion for a Preliminary Injunction

On February 23, 2009, Plaintiff submitted a Motion for a Preliminary Injunction and Temporary Restraining Order seeking an order enjoining the Defendants from: interfering with his Rastafarian religious practices, physically assaulting him, confining him in SHU under the pretext

---

[14] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

of false misbehavior reports, denying him medical care, stealing his mail, and denying him access to the law library.  Dkt. No. 57 at pp. 1-6.

In the Second Circuit, the standard for granting a temporary restraining order and a preliminary injunction is the same.  *See* FED. R. CIV. P. 65; *see also Local 1814 Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).

> In general, to secure a preliminary injunction, the moving party must demonstrate: (1) irreparable harm, and (2) either: (a) a likelihood of success on the merits of [the case], or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in [favor of the moving party].

*D.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (internal quotation marks and citation omitted).

Irreparable harm "means an injury for which a monetary award cannot bring adequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).  The Second Circuit has held that the alleged violation of a constitutional right triggers a finding of irreparable injury.  *See Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996).  Therefore, in cases involving alleged constitutional violations, the issue of irreparable harm merges with the question of success on the merits.  *See Metropolitan Council, Inc. v. Safir*, 99 F. Supp. 2d 438, 443 (S.D.N.Y. 2000) (citation omitted).

Finally, when the injunction sought "will alter, rather than maintain the *status quo*," or will "provide the movant with . . . relief [that] cannot be undone even if the defendant prevails at a trial on the merits," the moving party must show a "clear" or "substantial" likelihood of success.  *Beal v. Stern*, 184 F.3d 117, 122-23 (2d Cir. 1999) (citation omitted).

In this case, Plaintiff has failed to demonstrate either irreparable harm or a likelihood of

success on the merits of his claims.  Indeed, we have already recommended for dismissal the majority of Plaintiff's claims.  In addition, Plaintiff's Motion for Preliminary Injunction is presented in conclusory fashion and, for the most part, simply repeats the accusations brought in his Complaint.  Therefore, it is recommended that Plaintiff's Motion be **denied**.

## IV.  CONCLUSION

For the reasons stated above, it is recommended that the majority of the aforementioned claims be dismissed.  To clarify, should the district court adopt this Report-Recommendation, the following claims will remain: (1) excessive force and retaliation against Defendants Tamer, Orzech, T. Carter, Moak, and Labetz; (2) conspiracy against Defendants Tamer, Orzech, T. Carter, Moak, Labetz, R. Rock, and Warner; (3) violation of Plaintiff's First Amendment right to practice religion against Orzech; and (4) supervisory liability against Artus and Fischer.

Therefore, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 59) be **GRANTED in part** and **DENIED in part** in accordance with the above opinion; and it is further

**RECOMMENDED**, that the following Defendants be **DISMISSED** from this action: T. Ramsdell, C. Crossman, Fearchild, D. Uhler, M. Patnode, Lucien LeClair, Jr., Vonda Johnson, Fenyea, R. Lawrence, S. Tyrell, Lt. Miller, Lashway, Benthley, Knapp, Lucia, Loomis, Ferguson, Poltlos, Brousseau, J.T. Rice, D. Waldron, Quinn, Travers, Pedro Diaz, Robert Woods, Richard Roy, Brian Bengmann, N. Bezio, Steven Racette, Sgt. Rokece, Green, Ortloff (spelled "Oltloff" on the Docket), Karen Bellamy;[15] and it is further

---

[15] To clarify further, should the District Court adopt this Report-Recommendation, the following Defendants shall remain as parties in this action: T. Carter, Tamer, Moak, M. Orzech, Labetz, R. Rock, H. Warner, Artus, and Fischer.

**RECOMMENDED**, that Plaintiff's Motion for a Preliminary Injunction (Dkt. No. 57) be **DENIED**; and it is further

**ORDERED**, that should the District Court adopt this Court's recommendation that Defendant Labetz not be dismissed from the action, the Clerk shall issue a Summons and forward it, along with a copy of the Complaint, to the United States Marshal for service upon Defendant Labetz. Plaintiff is warned that failure to effectuate service upon Labetz within **<u>thirty (30) days of the date this Report-Recommendation is issued</u>** will result in this Court recommending dismissal of his claims against Labetz; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: August 25, 2009
       Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-29-*